Sophia G. Gold (SBN 307971)
sgold@kalielgold.com
Amanda J. Rosenberg (SBN 278507)
arosenberg@kalielgold.com
**KALIELGOLD PLLC**
490 43rd Street, No. 122
Oakland, California 94609
Telephone: (202) 350-4783

Jeffrey D. Kaliel (SBN 238293)
*jkaliel@kalielpllc.com*
**KALIELGOLD PLLC**
1100 15th Street NW, 4th Floor
Washington, DC 20005
Telephone: (202) 350-4783

*Attorneys for Plaintiffs and the Classes*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARISA SCOLA, BETHANY SIOSON, and ALAINA BROWN on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>EDIKTED LLC,<br><br>Defendant. | Case No.: '26CV4937 CAB DDL<br><br>**CLASS ACTION COMPLAINT**<br><br>**(DEMAND FOR JURY TRIAL)** |

Plaintiffs Marissa Scola, Bethany Siosan, and Alain Brown bring this action on behalf of themselves, and all others similarly situated, and allege upon information and belief based, among other things, upon the investigation made by Plaintiffs and through their attorneys, as follows:

## INTRODUCTION

1. This is a proposed class action seeking monetary damages, restitution, and public injunctive and declaratory relief from Defendant Edikted LLC, ("Defendant" or "Edikted") arising from its deceptive addition of junk fees to consumers' shopping carts.

2. When consumers browse products on the Edikted website, Edikted will advertise the price of its retail items, along with an advertisement for either free or paid shipping dependent on the dollar value of items purchased. Those pricing representations are false, however, because Edikted surreptitiously adds junk fees to consumer purchases on top of the free or paid shipping in the form of a so-called "Shipping Protection" fee.

3. As discussed in detail herein, the assessment of these Shipping Protection fees is deceptive and unfair, since: (a) Edikted automatically adds these fees into consumers' shopping carts; (b) the fees are nothing more than an additional empty cost for shipping, rendering retailer promises for "free" or paid shipping false; (c) the fees themselves are deceptively named and described; and (d) the fees provide no added value to consumers and reasonable consumers, like Plaintiffs, who would not knowingly choose to pay them, absent Defendant's deception.

4. Thousands of e-commerce customers like Plaintiffs have been assessed hidden shipping charges for which they did not bargain due to Edikted's deceptive tactics.

5. By unfairly obscuring its true shipping costs, Defendant deceives consumers and gains an unfair upper hand on competitors that fairly disclose their true shipping charges. To wit, other major e-commerce sites do <u>not</u> assess such a fee.

6. Plaintiffs seek damages and, among other remedies, public injunctive relief that fairly allows consumers to decide whether they will pay shipping costs.

## PARTIES

7. Plaintiff Marissa Scola is a citizen and resident of Herndon, Virginia.

8. Plaintiff Bethany Sioson is a citizen and resident of San Diego, California.

9. Plaintiff Alaina Brown is a citizen and resident of Turlock, California.

10. Defendant Edikted is headquartered in Los Angeles, California.

## JURISDICTION AND VENUE

11. This Court has original jurisdiction over this matter pursuant to the Class Action Fairness Act, ("CAFA"), under 28 U.S.C. § 1332(d)(2) because the matter in controversy, exclusive of interests and costs, exceeds the sum or value of $5,000,000, and is a class action in which there are excess of 100 class members, and some of the members of the class are citizens of states different from Defendants.

12. This Court has personal jurisdiction over Defendant because Defendant regularly and systematically conducts business in California.

13. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

### I. Edikted Surreptitiously Adds Fees to Consumers' Carts

14. Here's how Edikted's deception works. When a consumer views an item on the Edikted website, the consumer is shown the price of the item being considered for purchase along with a representation that the item will qualify for free or flat rate shipping.

15. When a consumer adds that item to their online shopping cart on the Edikted website, the consumer can see the selected merchandise at the viewed on the previous page with a note that "shipping and taxes calculated at checkout."

16. Once the customer proceeds to checkout phase to purchase the selected merchandise, it is only then the customer is first presented with Edikted's pre-selected "Shipping Protection" fee.

17. Upon information and belief, at the time of Plaintiffs' purchases, Edikted utilized a widget that automatically and surreptitiously opts users into purchasing "Shipping Protection" without affirmative consent. This method of adding on fees is designed to go undetected by consumers and thus provide additional revenue to Edikted.

18. The opt-out option is intentionally designed to be presented as subtle so as to go unnoticed by consumers, and engineered to force consumers to affirmatively opt-out of the junk fee in order to avoid it.

19. If the consumer fails to opt out of the Edikted Shipping Protection fee, the same free or applicable shipping fee applies but now the Edikted junk fee is foisted on top of the actual shipping fee.

20. This pre-selection and automatic opting in of consumers to junk fees is itself deceptive.

21. The Wall Street Journal highlights the problem, stating:

> Some brands automatically add optional coverage to orders***. Customers have complained the fees are disclosed in small fonts, made to appear mandatory when they are not or are displayed late in the online checkout process.***

Imani Moise, Porch Pirates Are Now Raising the Price You Pay at Checkout, Wall Street Journal, December 25, 2024, available at https://www.wsj.com/personal-finance/package-theft-hidden-fee-higher-prices-325c4a34?mod=Searchresults_pos3&page=1 (emphasis added).

22. As the FTC notes, "For years, unscrupulous direct-mail and brick-and-mortar retailers have used design tricks and psychological tactics such as pre-checked boxes, hard-to-find-and read disclosures, and confusing cancellation policies, to get consumers to give up their money or data." *FTC Report Shows Rise in Sophisticated*

*Dark Patterns Designed to Trick and Trap Consumers, September 15, 2022* (available at https://www.ftc.gov/news-events/news/press-releases/2022/09/ftc-report-shows-rise-sophisticated-dark-patterns-designed-trick-trap-consumers). The FTC further notes in its *Enforcement Policy Statement Regarding Negative Option Marketing* that **"[a] 'pre-checked box' does not constitute affirmative consent."** https://www.ftc.gov/system/files/documents/public_statements/1598063/negative_option_policy_statement-10-22-2021-tobureau.pdf Fn. 46 at at pg. 13 (emphasis added).

**II. The Add On Fees Render Promises of Free or Flat Rate Shipping False**

23. Even beyond the deceptive manner in which the fees are added, the fees themselves are additionally deceptive because they directly contradict other promises on Edikted's website concerning "free" or flat-rate shipping. That is because Edikted's add-on fees are, in actuality, a disguised shipping charge.

24. Whatever the Shipping Protection fee is for—and as described herein, it is totally unclear—it is a fee somehow related to shipping of the products purchased by consumers and any returns or exchanges that a consumer may undertake.

25. But as described herein, Edikted promised "free" or flat rate shipping. These were clear promises that the total, marginal cost of having products shipped—that is, moved from the retailer to the consumer—was represented by the "free" or flat rate shipping promise.

26. However, Defendant decided it could actually charge more for shipping, thereby increasing profitability, by misrepresenting the true shipping costs to consumers.

27. Defendant was or should have been aware that consumers were and would be deceived by an add-on shipping fee at the same time as a promise of "free" or paid shipping was being made.

28. Because it is well known that consumers prefer free or up-front and transparently clear shipping costs, Defendant made an intentional decision to break shipping costs into two parts and thus disguise its decision to charge more for shipping

through deceptive add-on Shipping Protection fees.

29. The deceptively added Shipping Protection fee is a hidden shipping fee. This renders false e-commerce retailers' promise of a free or fully disclosed shipping fee.

30. By unfairly obscuring its charges to consumers, Defendant deceives consumers and gains an unfair upper hand on competitors.

31. In addition to the manner in which the fees are added and the fact that the added fees render other "free," or other disclosed shipping fee promises false and deceptive, Defendant's fees are nonsense fees that provide little or no value to consumers.

## III. Defendant's "Shipping Protection" Fee Is Inaccurately Named and Described and Provides No Added Value to Consumers

32. Even beyond the deceptive manner in which the fees are added and the fact that fees themselves directly contradict other promises on e-commerce retailer websites regarding "free" or clearly disclosed flat rate shipping costs, the Shipping Protection fees are also deceptively named and described.

33. The fee provides little or no *additional* "coverage" for shipments than already exists. Many online already provide replacements and allow for returns and exchanges of products. Therefore, the Shipping Protection fee provides no extra protection for goods that arrive damaged. Defendant misrepresents, and omits material facts about, that truth.

34. Moreover, popular shipping services like UPS, Federal Express, USPS Priority Mail *automatically* include insurance for the first $100 worth of value in a package when goods are not delivered, stolen or damaged. Defendant misrepresents, and omits material facts about, that truth, too. Thus, for the vast majority of consumers—those who are paying to ship a product less than $100—the "Shipping Protection" fee is entirely worthless, because they are already provided the same protection by the shippers.

35. Additionally, in the event goods are not delivered, stolen or damaged, consumers, can report the issue to their credit card company or bank, who will often reverse the charge.

36. For all these reasons, the Shipping Protection fee is deceptively named and described.

37. Even beyond the deceptive manner in which the fees are added, the fact that fees themselves directly contradict other promises on e-commerce retailer websites regarding "free," flat-rate, or properly disclosed shipping fees, and the fact that the "Shipping Protection" fees are deceptively named and described, they also provide virtually no additional value to consumers. No reasonable consumer would knowingly elect to pay for the "Shipping Protection" fee because it provides essentially zero additional value to consumers.

38. As described above, damaged goods may already be returned to the retailer; third party shipping services like USPS, UPS and FedEx already provide some insurance coverage; and lost or stolen packages can be reported to credit card companies for chargebacks. Accordingly, the additional fee serves no purpose.

## IV. <u>Defendant's Fees are Junk Fees and Violate Federal Guidance</u>

39. Under federal law, this practice is called a "negative option," which is "'an offer or agreement to sell or provide any goods or services, a provision under which the customer's silence or failure to take an affirmative action to reject goods or services or to cancel the agreement is interpreted by the seller as acceptance of the offer.'" 16 C.F.R. § 310.2(w). These negative options are routinely found to violate federal laws, including the Restore Online Shoppers' Confidence Act ("ROSCA").

40. Defendant's shipping fees, such as the Shipping Protection fee, are precisely the type of "Junk Fee" that have come under government scrutiny in recent years:

> [M]any consumers said that sellers often do not advertise the total amount they will have to pay, and disclose fees only after they are well into completing the transaction. They also said that sellers often misrepresent

> or do not adequately disclose the nature or purpose of certain fees, leaving consumers wondering what they are paying for or if they are getting anything at all for the fee charged.

Federal Trade Commission, FTC Proposes Rule to Ban Junk Fees – Proposed rule would prohibit hidden and falsely advertised fees, October 11, 2023, available at https://www.ftc.gov/news-events/news/press-releases/2023/10/ftc-proposes-rule-ban-junk-fees.

41. In July of 2024, California expanded its Consumer Legal Remedies Act ("CLRA") amending it to make "drip pricing," illegal, which involves advertising a price that is less than the actual price that a consumer will have to pay for a good or service. California Civil Code Section 1770(a)(29). Under the new California law, it is now illegal to advertise a low price for a product, only for that product to be subject to additional or mandatory fees later. In other words, "the price listed or advertised to the consumer must be the full price that the consumer is required to pay." See California Department of Justice, Office of the Attorney General, *SB 478 Frequently Asked Questions*, available at https://oag.ca.gov/system/files/attachments/press-docs/SB%20478%20FAQ%20%28B%29.pdf . As the California Department of Justice stated:

> Businesses are free to explain how they set their prices or to *subsequently* itemize the charges that make up the total price that they charge customers. However, the price they advertise or display must be the total price that customers will have to pay for the good or service. Knowing the price of a good of service is essential to competition, and displaying a price that is less than what the customer will actually be charged is deceptive.

*Id*. at p. 4 (emphasis added).

42. In its 2013 publication ".com Disclosures: How to Make Effective Disclosures in Digital Advertising," the FTC makes clear that when advertising and selling are combined on a website, and the consumer will be completing the transaction online, the disclosures should be provided before the consumer makes the decision to

buy – for example, before the consumer "add[s] to shopping cart." See Fed. Trade Comm'n, .com Disclosures: How to Make Effective Disclosures in Digital Advertising at ii, 14 (Mar. 2013), available at https://www.ftc.gov/sites/default/files/attachments/press-releases/ftc-staff-revises-online-advertising-disclosure-guidelines/130312dotcomdisclosures.pdf

43. Defendant violates federal guidance and California law by adding the shipping fees as line items well after the consumer "add[s] to shopping cart," and by failing to disclose the nature of these fees.

44. Just this month, the companies that operate the Hopper travel apps have agreed to pay $35 million and will be prohibited from deceiving consumers about fees to settle the Federal Trade Commission's allegations that they unfairly charged users without their consent for "Tip" and VIP Support fees that the company claimed were optional yet were hidden and pre-selected for consumers. See Fed. Trade Comm'n, Travel App Hopper to Pay $35 Million to Settle FTC Allegations It Charged Fees Without Consent and Deceived Users About Fees and Benefits of Some Products, July 2, 2026, available at https://www.ftc.gov/news-events/news/press-releases/2026/07/travel-app-hopper-pay-35-million-settle-ftc-allegations-it-charged-fees-without-consent-deceived "Hopper deceived consumers by showing them a total price that did not include hidden, pre-selected fees," said Christopher Mufarrige, Director of the FTC's Bureau of Consumer Protection. *Id*.

## V. Plaintiff Scola's Experience

45. On or about November 22, 2025, Plaintiff Scola purchased clothing from the Edikted website.

46. When using the website, Plaintiff Scola was repeatedly informed that she would get free shipping as part of her purchase.

47. However, her purchase included a $2.00 charge for a "Shipping Protection" fee that was automatically and surreptitiously added to her cart, that—for the reasons described above—in fact represented an additional shipping charge.

48. Plaintiff Scola did not know the charge existed or could be removed prior to her purchase.

49. Plaintiff Scola would not have purchased Shipping Protection if she knew it was optional.

## VI. Plaintiff Sioson's Experience

50. On or about September 2, 2024, Plaintiff Sioson purchased clothing from the Edikted website.

51. When using the website, Plaintiff Sioson was repeatedly informed that she would get free shipping as part of her purchase.

52. However, her purchase included a $1.50 charge for a "Shipping Protection" fee that was automatically and surreptitiously added to her cart, that—for the reasons described above—in fact represented an additional shipping charge.

53. Plaintiff Sioson did not know the charge existed or could be removed prior to her purchase.

54. Plaintiff Sioson would not have purchased Shipping Protection if she knew it was optional.

## VII. Plaintiff Brown's Experience

55. On or about November 27, 2025, Plaintiff Brown purchased clothing from the Edikted website.

56. When using the website, Plaintiff Brown was repeatedly informed that she would get free shipping as part of her purchase.

57. However, her purchase included a $1.45 charge for a "Shipping Protection" fee that was automatically and surreptitiously added to her cart, that—for the reasons described above—in fact represented an additional shipping charge.

58. On or about February 20, 2026, Plaintiff Brown purchased clothing from the Edikted website.

59. When using the website, Plaintiff Brown was repeatedly informed that she would get free shipping as part of her purchase.

60. However, her purchase included a $1.45 charge for a "Shipping Protection" fee that was automatically and surreptitiously added to her cart, that—for the reasons described above—in fact represented an additional shipping charge.

61. Plaintiff Brown did not know the charges existed or could be removed prior to her purchases.

62. Plaintiff Brown would not have purchased Shipping Protection if she knew it was optional.

## CLASS ALLEGATIONS

63. Plaintiffs bring this action on behalf of themselves, and all other similarly situated persons. The proposed Class is defined as:

> All consumers who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, paid Edikted a Shipping Protection fee.

64. Excluded from the Class are Defendant, any entities in which it has a controlling interest, any of its parents, subsidiaries, affiliates, officers, directors, employees and members of such persons' immediate families, and the presiding judge(s) in this case, and their staff. Plaintiffs reserve the right to expand, limit, modify, or amend this class definition, including the addition of one or more subclasses, in connection with his motion for class certification, or at any other time, based upon, *inter alia,* changing circumstances and/or new facts obtained during discovery.

65. Plaintiffs reserve the right to modify or amend the definition of the proposed Class and/or add a subclass(es), if necessary, before this Court determines whether certification is appropriate.

66. The parties are numerous such that joinder is impracticable. Upon information and belief, and subject to class discovery, the Class consists of thousands of members or more, the identity of whom are within the exclusive knowledge of and can be ascertained only by resort to Defendant's records. Defendant has the administrative capability through its computer systems and other business records to

identify all members of the Class, and such specific information is not otherwise available to Plaintiffs.

67. The questions here are ones of common or general interest such that there is a well-defined community of interest among the members of the Class. These questions predominate over questions that may affect only individual class members because Defendant has acted on grounds generally applicable to the Class. Such common legal or factual questions include, but are not limited to:

a. Whether Defendant's alleged misconduct misled or had the tendency to mislead consumers;

b. Whether Defendant engaged in unfair, unlawful, and/or fraudulent business practices under the laws asserted;

c. Whether Defendant's alleged conduct constitutes violations of the laws asserted;

d. Whether Plaintiffs and members of the Class were harmed by Defendant's misrepresentations;

e. Whether Defendant was unjustly enriched;

f. Whether Plaintiffs and the Class have been damaged, and if so, the proper measure of damages; and

g. Whether an injunction is necessary to prevent Defendant from continuing to engage in the wrongful conduct described herein.

68. Plaintiffs' claims are typical of the claims of the other members of the Class in that they arise out of the same wrongful business practices by Defendant, as described herein.

69. Plaintiffs are more than adequate representatives of the Class in that Plaintiffs are Defendant's customer and has suffered damages as a result of Defendant's misrepresentations. In addition:

a) Plaintiffs are committed to the vigorous prosecution of this action on behalf of themselves and all others similarly situated and has retained

competent counsel experienced in the prosecution of consumer class actions;

b) There is no conflict of interest between Plaintiffs and the unnamed members of the Class;

c) Plaintiffs anticipate no difficulty in the management of this litigation as a class action; and

d) Plaintiffs' legal counsel has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

70. Common questions of fact or law concerning Edikted's liability to all class members for charging shipping protection fees on transactions that didn't give class members any appreciable benefit would predominate over any questions affecting only individual class members. Plaintiffs' proposed class action is the superior method for resolving this dispute because it is impracticable to bring proposed Class members' individual claims before the Court, especially where, as here, individual class members' damages are relatively small. Class treatment permits many similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent Plaintiffs knows of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

**<u>FIRST CLAIM FOR RELIEF</u>**
**Violation of California's Unfair Competition Law**
**(Cal. Bus. & Prof. Code § 17200, et seq.)**
**(On Behalf of Plaintiffs and the Class)**

71. Plaintiffs hereby incorporate by reference the preceding paragraphs.

72. Defendant's conduct described herein violates the Unfair Competition Law ("UCL"), codified at California Business and Professions Code section 17200, *et seq*.

73. The UCL prohibits, and provides civil remedies for, unfair competition.

Its purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services. In service of that purpose, the Legislature framed the UCL's substantive provisions in broad, sweeping language.

74. The UCL imposes strict liability. Plaintiffs need not prove that Defendant intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices—but only that such practices occurred.

75. A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications, and motives of the practice against the gravity of the harm to the alleged victims.

76. A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the public.

77. A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

78. Defendant committed unfair and fraudulent business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*, by affirmatively and knowingly (a) sneaking fees into consumers' carts; (b) deceptively naming and describing the fees; (c) charging fees that are in actuality simply the price involved in the shipping process; and (d) charging fees that provide no added value to reasonable consumers, like Plaintiffs, who would not knowingly choose to pay them, absent Defendant's deception.

79. Defendant's acts and practices offend an established public policy of truthful advertising in the marketplace, and constitute immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

80. The harm to Plaintiffs and the Class outweighs the utility of Defendant's practices. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the misleading and deceptive conduct

described herein.

81. Defendant's conduct also constitutes an "unlawful" act under the UCL because it also constitutes a violation of sections of the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code section 1750, *et seq.*as more thoroughly described below.

82. Edikted's conduct also constitutes an "unlawful" act under the UCL because it constitutes a violation of the Restore Online Shopper's Confidence Act ("ROSCA"), 15 U.S.C. §§ 8401–8405. Specifically, Edikted used "'negative option'" sales [that] took advantage of consumers' expectations." *Id.*, § 8401(8). Moreover, Edikted violated ROSCA by using a negative option feature that (1) did not provide text that clearly and conspicuously discloses all material terms of the transaction before obtaining the consumer's billing information; and (2) did not obtain the consumer's express informed consent before charging the consumer's credit card, debit card, bank account, or other financial account for products or services through such transaction. *Id.*, § 8403(1), (2).

83. Defendant's business practices have misled Plaintiffs and the proposed Class and, unless enjoined, will continue to mislead them in the future.

84. Plaintiffs relied on Defendant's misrepresentations in making their purchase. Specifically, Defendant (a) deceptively added fees into consumers' carts; (b) deceptively named and described the add-on fees; (c) charged Plaintiffs and Class members for shipping above and beyond what was promised to them; and (d) charged fees that provide no added value to consumers and reasonable consumers, like Plaintiffs, would not knowingly choose to pay them, absent Defendant's deception.

85. As a direct and proximate result of Defendant's unfair, fraudulent, and unlawful practices, Plaintiffs and Class members suffered and will continue to suffer actual damages. Defendant's fraudulent conduct is ongoing and presents a continuing threat to Plaintiffs and Class members that they will be deceived. Plaintiffs desire to conduct further business with Defendant but cannot rely on Defendant's

representations unless an injunction is issued.

86. As a result of its unfair, fraudulent, and unlawful conduct, Defendant has been unjustly enriched and should be required to disgorge its unjust profits and make restitution to Plaintiffs and Class members pursuant to Cal. Bus. & Prof. Code § 17203 and 17204.

87. Pursuant to Business & Professions Code §§ 17203 and 17500, Plaintiffs and the members of the Class, on behalf of the general public, seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its unfair, unlawful, and fraudulent practices.

88. Plaintiffs have no adequate remedy at law in part because Defendant continues to automatically add fees to all purchases. Plaintiffs therefore seek an injunction on behalf of the general public to prevent Defendant from continuing to engage in the deceptive and misleading practices described herein.

## SECOND CLAIM FOR RELIEF
**False and Misleading Advertising**
**(Bus. & Prof. Code §§ 17500, et seq.)**
**(On Behalf of Plaintiffs and the Class)**

89. Plaintiffs hereby incorporate by reference the preceding paragraphs as if fully restated here.

90. California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code section 17500, states that "[i]t is unlawful for any . . . corporation . . . with intent . . . to dispose of . . . personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . . ."

91. Defendant's material misrepresentations and omissions alleged herein

violate Business and Professions Code section 17500.

92. Defendant knew or should have known that its misrepresentations and omissions were false, deceptive, and misleading.

93. Pursuant to Business and Professions Code sections 17203 and 17500, Plaintiffs and the members of the Classes, on behalf of the general public, seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its deceptive practices.

94. Further, Plaintiffs request an order awarding Plaintiffs and Class members restitution of the money wrongfully acquired by Defendant by means of said misrepresentations.

95. Additionally, Plaintiffs and Class members seek an order requiring Defendant to pay attorneys' fees pursuant to California Civil Code section 1021.5.

**THIRD CLAIM FOR RELIEF**
**Violation of California's Consumers Legal Remedies Act ("CLRA")**
**(Cal. Civ. Code § 1750, *et seq.*)**
**(On Behalf of Plaintiffs and the Class)**

96. Plaintiffs incorporate the preceding allegations by reference as if fully set forth herein.

97. This cause of action is brought pursuant to the Consumers Legal Remedies Act ("CLRA"), California Civil Code § 1750, *et seq*. Plaintiffs and each member of the proposed Class are "consumers" as defined by California Civil Code § 1761(d). Defendant's sale of merchandise and shipping insurance to consumers were "transactions" within the meaning of California Civil Code § 1761(e). The merchandise purchased by Plaintiffs and the Classes are "goods" within the meaning of California Civil Code § 1761(a).

98. Defendant violated and continues to violate the CLRA by engaging in the following practices proscribed by California Civil Code § 1770(a) in transactions with Plaintiffs and the Class which were intended to result in, and did result in, the sale of merchandise:

a. "Misrepresenting the affiliation, connection, or association with, or certification by, another" (a)(3);

b. "Representing that goods or services have . . . characteristics . . . that they do not have" (a)(5);

c. "Advertising goods or services with intent not to sell them as advertised" (a)(9);

d. "Representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law" (a)(14);

e. "Advertising that a product is being offered at a specific price plus a specific percentage of that price unless (A) the total price is set forth in the advertisement, which may include, but is not limited to, shelf tags, displays, and media advertising, in a size larger than any other price in that advertisement, and (B) the specific price plus a specific percentage of that price represents a markup from the seller's costs or from the wholesale price of the product" (a)(20); and

f. "Advertising, displaying, or offering a price for a good or service that does not include all mandatory fees or charges" (a)(29).

99. Specifically, Defendant (a) deceptively added fees into consumers' carts; (b) deceptively named and described the add-on fees; (c) charged Plaintiffs and Class members for shipping above and beyond what was promised and already provided to them; and (d) charged fees that provide no added value to consumers and reasonable consumers, like Plaintiffs, would not knowingly choose to pay them, absent Defendant's deception.

100. Pursuant to § 1782(a) of the CLRA, Plaintiffs' counsel notified Defendant in writing by certified mail of the particular violations of §1770 of the CLRA and demanded that it rectify the problems associated with the actions detailed above and

give notice to all affected consumers of Defendant's intent to act. If Defendant fails to respond to Plaintiffs' letter or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice, as proscribed by §1782, Plaintiffs will move to amend her Complaint to pursue claims for actual, punitive and statutory damages, as appropriate against Defendant. As to this cause of action, at this time, Plaintiffs seeks only injunctive relief.

101. Plaintiffs also seek public injunctive relief, as described above.

**<u>FOURTH CLAIM FOR RELIEF</u>**
**Unjust Enrichment**
**(On Behalf of Plaintiffs and the Class)**

102. Plaintiffs repeat, reallege, and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

103. To the detriment of Plaintiffs and the Class, Defendant has been, and continues to be, unjustly enriched as a result of its wrongful conduct alleged herein.

104. Plaintiffs and the Class conferred a benefit on Defendant.

105. Defendant unfairly, deceptively, unjustly, and/or unlawfully accepted said benefits, which under the circumstances, would be unjust to allow Defendant to retain.

106. Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

107. Plaintiffs and the Class, therefore, seek disgorgement of all wrongfully obtained fees received by Defendant as a result of its inequitable conduct as more fully stated herein.

**<u>FOURTH CLAIM FOR RELIEF</u>**
**Breach of Contract**
**(On Behalf of Plaintiffs and the Class)**

108. Plaintiffs repeat and reallege the above allegations as if fully set forth herein.

109. Plaintiffs and Defendant have contracted for the purchase of merchandise.

110. No contract provision authorizes Defendant to be able to charge add on fees to customers.

111. Defendant breached the terms of its contract with consumers by charging add on fees such as the Shipping Protection fee.

112. Plaintiffs and members of the Class have performed all, or substantially all, of the obligations imposed on them under the contract.

113. Plaintiffs and members of the Class have sustained damages as a result of Defendant's breach of the contract and breach of the implied covenant of good faith and fair dealing.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of the Classes demands a jury trial on all claims so triable and judgment as follows:

(a) Certifying the proposed Class, appointing Plaintiffs as representative of the Class, and appointing Plaintiffs' counsel as class counsel for the proposed Class;

(b) For declaratory and injunctive relief as set forth above;

(c) For an order requiring Defendant to disgorge and make restitution of all monies it acquired by means of the unlawful practices set forth above;

(d) For compensatory damages according to proof;

(e) For punitive damages according to proof;

(f) For reasonable attorneys' fees and costs of suit;

(g) For pre-judgment interest at the maximum rate permitted by applicable law; and

(h) Awarding such other and further relief as this Court deems just, proper and equitable.

///

///

///

///

**DEMAND FOR JURY TRIAL**

Plaintiffs and all others similarly situated hereby demand trial by jury on all issues in this Class Action Complaint that are so triable.

Dated: August 31, 2026

**KALIELGOLD PLLC**

By: */s/ Sophia G. Gold*
Jeffrey D. Kaliel
Sophia G. Gold
Amanda J. Rosenberg

*Attorneys for Plaintiffs and the Putative Classes*